**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BRYAN, TIM HANCOCK, JEFF MORALES, IGNACIO TORRES, and CREG QUIROZ,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>Defendant.<br>————————————————<br>AND CONSOLIDATED ACTION.<br>———————————————— | No. C 01-01730 WHA<br><br>Consolidated with:<br><br>No. C 02-02601<br><br>**ORDER ADOPTING IN PART SPECIAL MASTER'S REPORT AND DENYING PLAINTIFFS' SUPPLEMENTAL REQUEST FOR ATTORNEY'S FEES** |

**INTRODUCTION**

In this action under California's Fair Housing and Employment Act, plaintiffs have been granted attorney's fees for prosecution of this action. Parties were unable to agree as to the amount of attorney's fees and were referred to a special master. Plaintiffs now move to adopt the special master's report, while defendants make objections regarding the items for which plaintiffs should receive attorney's fees. The special master erred in determining the amount of fees to which plaintiffs' counsel is entitled for the prior action. Plaintiffs should not have been awarded a lodestar multiplier of 1.5, and the special master erred in determining the amount of attorney's fees to be awarded to attorney John J. Mavredakis. The special master's findings with regard to fees-for-fees were correct. Accordingly, plaintiffs' motion to adopt the special

master's report is **GRANTED IN PART AND DENIED IN PART**. The special master's fee will be apportioned equally between plaintiffs and defendant. Plaintiffs' request for supplemental attorney's fees for the period between the hearing before the special master through the present is **DENIED**.

**STATEMENT**

The details of this action have been recited in other orders on motions in this action. This action was originally filed on May 3, 2001, on behalf of several plaintiffs. It is a follow-on to a separate, earlier-filed action that dealt with similar claims, the EEOC/Hogya action. In that action, the EEOC sued defendant UPS, alleging that the vision protocol UPS used to screen out drivers who could not see well enough to safely operate commercial vehicles was discriminatory. Several private individuals intervened. Those plaintiffs were monocular individuals who alleged that UPS discriminated against them because they were not allowed to work as full-time package-delivery truck drivers.

A bench trial was held in the EEOC/Hogya action on claims by those plaintiffs who had not passed the vision protocol. The Court held that two of four plaintiffs were disabled but otherwise unqualified and that another plaintiff was not disabled. The Court also enjoined UPS from using its vision protocol because it unfairly discriminated against monocular job candidates. Both sides appealed, and the Ninth Circuit reversed the finding that two plaintiffs were disabled and remanded to determine whether UPS perceived that the claimants were substantially limited in the activity of seeing. *EEOC v. UPS*, 306 F.3d 795, 796 (2002). The decision also upheld the UPS' use of the vision protocol as a valid, safety-based standard. *Ibid*. On remand this Court held that none of those employees in the EEOC/Hogya action were disabled and addressed the claims under FEHA. Final judgment in that action was entered for UPS.

Plaintiffs Hancock and Quiroz brought their claims under FEHA, and their action was stayed pending the first appeal. After trial in the EEOC/Hogya action, plaintiffs filed a motion for partial summary judgment on the issue of disability, which was granted. This court certified the issue of disability under FEHA for interlocutory appeal. That appeal was considered

2

together with the second appeal in the EEOC/Hogya action. The grant of partial summary judgment on Hancock and Quiroz's claims was upheld; final judgment for UPS in the EEOC/Hogya action was upheld as well. *EEOC v. UPS*, 424 F.3d 1060 (2006).

Although Hancock and Quiroz were held to be disabled, they were eligible for jobs with UPS because they had passed the vision protocol. After the appeal, Hancock and Quiroz settled with UPS for $75,000 for their back pay claims.

An order dated September 20, 2006, granted attorney's fees to plaintiffs for the claims brought by Hancock and Quiroz because they were considered prevailing parties under FEHA. No attorney's fees were awarded for the EEOC/Hogya action. Parties were directed to meet and confer regarding the amounts of attorney's fees to be awarded. They were unable to resolve the matter themselves, so they agreed on a special master, William A. Quinby. He was appointed by the Court on February 15, 2007. The special master asked for submissions from the parties and held hearings, eventually culminating in the report at issue. In his report, he ultimately determined that plaintiffs were entitled to recover $1,001,188.14 in attorney's fees. An order dated July 24, 2007, allowed parties to either file objections to the report or file motions to adopt it. Plaintiffs filed a motion to adopt the report, while defendants filed objections. Plaintiffs also filed a supplemental application for attorney's fees. A briefing schedule was set regarding these motions and a hearing was held on September 20, 2007.

**ANALYSIS**

Under Rule 53(g)(3), all objections to a special master's findings of fact must be decided de novo, unless the parties otherwise stipulate. Parties did not so stipulate. All objections to the special master's conclusions of law must be reviewed de novo. Fed. R. Civ. P. 53(g)(4).

**1.   DEFENDANT'S OBJECTIONS.**

Defendant objects to the special master's report for several reasons. *First*, it contends that plaintiffs are not entitled to a lodestar multiplier to compensate for the risk involved in taking on the case. *Second*, it argues that plaintiffs here cannot recover attorney's fees in the EEOC/Hogya action. *Third*, UPS argues that John Mavredakis is not entitled to fees because he could not properly account for his time. *Fourth*, UPS objects to the special master's

3

determination that plaintiffs are entitled to recover "fees-for-fees," *i.e.*, attorney's fees in pursuing attorney's fees from the original action.

### B.     Lodestar Multiplier.

UPS objects to the special master's award of a lodestar multiplier of 1.5 to plaintiffs for their total fees amount. First, the special master determined that "a ruling of significant precedential value was secured, and the monetary recoveries [by Hancock and Quiroz] were sufficient" to justify such a multiplier (Report 4). He then awarded a multiplier of 1.5 because of the "contingent risk" on the merits of the case up to September 20, 2006, the point at which this Court determined that plaintiffs were prevailing parties (*ibid.*).

Generally, there is a presumption that lodestar amounts are sufficient and adjustments to the lodestar figure are appropriate only in exceptional cases. *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992). Here, plaintiffs argue that they obtained a precedential Ninth Circuit opinion holding that monocular individuals are disabled in the major life activity of working under FEHA. *See EEOC v. UPS*, 424 F.3d 1060, 1071 (9th Cir. 2006). Defendant contends that the appeal was ultimately unsuccessful, and moreover, UPS was never required to change any of its policies as a result of this or the EEOC/Hogya litigation. Thus, according to defendant, the action did not secure a significant public benefit. The action benefitted only Hancock and Quiroz.

In determining the amount of fees, a court may consider the degree of success that the plaintiffs achieved, particularly where the plaintiffs are considered successful on only part of their claims. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The amount of monetary recovery achieved can be a factor in determining whether to increase or decrease a lodestar figure. *See Navarro v. General Nutrition Corp.*, 2005 WL 2333803, *18 (N.D. Cal. 2005) (Armstrong, J.). Here, plaintiffs settled this action for only $75,000 in back pay claims. UPS changed none of its policies because of the settlement, and plaintiffs' status at the company did not change either because they had already passed the vision protocol. One effect of the multiplier would be to mushroom the overall award out of any reasonable proportion to the modest recovery in this case. Accordingly, the special master's award of a lodestar multiplier of

4

1.5 was unwarranted. Plaintiffs' motion to adopt the special master's report is **DENIED** as to the lodestar multiplier. No multiplier will be applied to the lodestar.

### C. Work Done for the EEOC/Hogya Action.

Defendant contends that plaintiffs should not be able to recover any attorney's fees at all for work done in pursuit of the prior unsuccessful EEOC/Hogya action because plaintiffs were not prevailing parties. Specifically, UPS argues that the Rosen firm only should receive $184,642.20 in fees incurred on the merits of this action. It disagrees with the special master's conclusion that some of the work done in the prior action was necessary in this action. Regarding this issue, the special master's report determined (Report 3):

> I concluded that some of that work was appropriate or necessary to the successful prosecution of the Hancock and Quiroz claims and formed my own conclusions regarding billing reductions. In general, I concluded that on a percentage basis, the total lodestar should be reduced by approximately $1,528,234.80, a number that is lower than requested by Plaintiffs' counsel and higher than that suggested by UPS. I accepted the "discrete billing reductions" proposed by Plaintiff's counsel, and adjusted the "project-based billing reductions", generally downward, to reflect my conclusion that there was a common core of facts and legal theories and that a percentage of certain of the overall efforts of counsel were appropriate or necessary to the successful prosecution of the Hancock and Quiroz claims.

Here, both actions concerned whether or not monocular individuals could be considered disabled in the area of work and the validity of UPS' vision protocol for drivers.

If work in a first, unsuccessful action was not necessary to win a second action, fees for the first action should not be awarded. *Carroll v. Import Motors, Inc.*, 33 Cal. App. 4th 1429, 1438–39 (1995). Here, plaintiffs contend that even though they were unsuccessful in the first action, research and projects they performed were necessary to obtain settlement in the second action. Defendants contend that since this Court and the Ninth Circuit upheld UPS vision protocol, none of the fees incurred in the first action should be recoverable here. This is not the same thing as finding that the prior action had no bearing on the claims of Quiroz and Hancock.

A closer look at the special master's report shows that the majority of the Rosen firm's fees were incurred on Hancock and Quiroz's claims. The special master recommended approximately $11,000 in fees for the Rosen firm for the EEOC/Hogya action. The records

5

1  show that the Rosen firm did a small amount of work on the later stages of EEOC/Hogya action.
2  The projects were listed as "consultation and assistance with the EEOC/Hogya trial" and
3  "interim attorney's fees demand and settlement" in that action. The Rosen firms' lodestar for
4  these two projects was reduced by 70% and 80% respectively (Report Exh. D). Such reduction
5  seems reasonable given the relatively small amount of time expended by the Rosen firm in
6  pursuit of the first action.

### C. Fees to John J. Mavredakis.

UPS objects to fees awarded to John J. Mavredakis for two reasons. First, the majority of the fees were incurred in the EEOC/Hogya action. Second, a portion of those fees were not based on contemporaneous time records.

The bulk of the fees awarded by the special master came from the merits of the Hogya action, with $216,609.50 coming from the Hogya action, and an additional $113,010 coming from the Quiroz action. Because Mr. Mavredakis lost his time records, the special master did not make a project-by-project determination of which tasks were related to this action. To arrive at the amount of attorney's fees incurred in the Hogya action, the special master reduced Mavredakis' original lodestar fee by 70% across the board. This order feels that this reduction was not enough in light of the circumstances. Undoubtedly, most of those projects had little to do with this action. Moreover, attorney Mavredakis tried the Hogya action before the undersigned, thus the Court is well aware of the work done, mostly by EEOC counsel and some by Mr. Mavredakis. In view of this, a greater reduction to the lodestar is in order here.

UPS objects to the award of fees to attorney John Mavredakis based on his reconstructed records. The special master awarded Mavredakis $110,580 without the multiplier for the time period up to June 2001. At that point, his computer crashed, so he was unable to produce contemporaneous time records for this fee application. The special master determined the following (Report 4):

> On the issue of whether the use of reconstructed time records by Mr. Mavredakis for a portion of his claim should preclude the recovery of any fees, I concluded that it should not. The computer crash was accidental, the time period involved was relatively small in the total scheme of things, the reconstruction was reasonably and conservatively done, and the amount of fees

6

> associated with the reconstruction was deleted as a part of discrete billing reductions.

Defendant contends that this finding was in error because Mavredakis' loss of the billing records was his own fault because he failed to back up his hard drive or print out contemporaneous hard copies of the records. He also did not take reasonable steps to recover the data from his computer. According to defendants, a reasonably prudent attorney would take these actions, particularly where they knew they would be making a fees application. Moreover, when UPS asked Mavredakis for the underlying records he had used to reconstruct his time, he refused to turn them over on the grounds of privilege.

Defendant contends that because Mavredakis did not take adequate steps to safeguard his data, he should receive no fees for any work done in this action. This position seems a bit harsh. California courts have approved fee applications based on reconstructed data where the attorney accidentally lost his or her records. *See Fergus v. Songer*, 150 Cal. App. 4th 552, 568–59 (May 3, 2007) (upholding a jury verdict award of attorney's fees where the attorney had lost the records, but created a reconstructed report based on materials from his files which he made available to the court). The mere fact that Mavredakis lost his records does not completely bar his recovering attorney's fees. Of more concern is his refusal to turn over the materials on which his reconstruction was based to defendant. The law is clear that the party seeking fees and costs has the burden to document the hours expended. *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1020 (2001). At the hearing, counsel argued that portions of those records were privileged. The burden was on plaintiffs, however, to redact any privileged portions and turn the records over to defendant.

In sum, the work done by Mavredakis for the first action was not of great value to securing a settlement in *this* action. Additionally, Mavredakis' refusal to turn over the underlying records was unfair. Accordingly, a reduction to the lodestar fee by 90% is appropriate here. The Law Offices of John J. Mavredakis will receive $71,913.33 in fees for the merits of the Hogya action.

7

### D. Fees-for-Fees.

Finally, UPS objects to plaintiffs' being awarded fees-for-fees, or attorney's fees awarded for going through the meet-and-confer and special-master process. Defendant contends that plaintiffs ask for fees expended in arguing for fees from the unsuccessful action to which plaintiffs were never entitled. Here, however, this order has determined that plaintiffs were entitled to recover at least a portion of fees from Hogya action. Accordingly, this finding by the special master is free from error, and plaintiffs' motion to adopt the special master's report as to fees-for-fees is **GRANTED**.

### 2. PLAINTIFFS' SUPPLEMENTAL REQUESTS.

Plaintiffs ask the Court to address two questions: (1) the apportionment of the special master's fee; and (2) the dates on which interest should begin accruing on the fees award. Plaintiffs have also filed a supplemental request for attorney's fees for bringing this motion to adopt the special master's report and opposing defendant's objections.

As to the special master's fees, the special master made no recommendation in his report regarding how his fees were to be allocated. This Court, however, will take into account the reasonableness of parties' respective positions. Here, there were several significant issues to consider in determining the amount of attorney's fees. Plaintiffs' request has been reduced drastically from what they originally asked. Plaintiffs simply should not have expected to recover as much as they had asked for with regard to fees from the prior EEOC/Hogya litigation, and Mavredakis should not have expected to recover so much in fees where his computer crashed and he was unwilling to turn over what records he had to defendant. On the other hand, UPS's contention that the actions were unrelated was unsupportable, as was its contention that attorney Mavredakis should get nothing at all in fees for this action. Still, the burden was on plaintiffs to produce Mavredakis' records, and UPS was the prevailing party in the EEOC/Hogya action. The issues here were certainly hard fought by both sides, but neither side took positions that were *per se* unreasonable. Accordingly, this order will apportion the special master's fees equally among the parties. Plaintiffs have already paid half of the special

8

1 master's invoiced fees. Their request that defendants reimburse them for that amount is
2 **DENIED**.

3 The special master also did not address the question of when interest should begin to
4 accrue on the award of attorney's fees. UPS has not objected to an award of interest, but it does
5 dispute the date on which interest begin to accrue. Because there were a number of close,
6 hotly-contested issues with regard to attorney's fees, interest should accrue from the date of the
7 special master's report, June 20, 2007.

8 Finally, plaintiffs ask for supplemental fees for bringing this motion and opposing
9 defendant's objections. The request covers fees incurred from June 20, 2007, through the date
10 of this hearing. As an initial matter, plaintiffs put far too much stock in the Court's allowing
11 them to bring this request. Hearing the request and granting it are two entirely different matters.
12 It is manifestly unfair to force defendants to decide between not voicing potentially legitimate
13 objections to plaintiffs' fee applications and being punished for those objections. *See Serrano*
14 *v. Unruh*, 32 Cal. 3d 621, 638 (1982). Here, defendants will not be required to pay the costs of
15 plaintiffs' bringing this motion. Accordingly, plaintiffs' supplemental application for fees is
16 **DENIED**.

## CONCLUSION

18 For all of the above-stated reasons, plaintiffs' motion to adopt the special master report
19 is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' request to apportion the special
20 master's to defendant is **DENIED**; the special master's fee shall be apportioned equally among
21 plaintiffs and defendants. Plaintiff's share will be deducted from its total recovery. Plaintiffs'
22 supplemental request for attorney's fees is **DENIED**. Defendants shall pay attorney's fees in the
23 amount of $395,016.60 to Rosen, Bien & Asaro LLP, less the Rosen firm's pro rata share of the
24 fee recoupment. Defendants shall pay attorney's fees in the amount of $186,798 to the Law
25 Offices of John J. Mavredakis, less his pro rata share of the fee recoupment.[*] Defendants shall

---

27 [*] By an order dated September 20, 2006, this Court determined that UPS was entitled to recoup
28 $299,000 in attorney's fees paid to plaintiffs' counsel as a preliminary payment made in June 2002. The amount was paid to plaintiffs' attorneys contingent on a finding that Hogya was a prevailing party in the first action. The special master's report states that John Mavredakis' pro rata share of that amount is $258,596.99, and the

9

also pay interest accrued on those amounts from July 20, 2007, to the present, at the rate provided in 28 U.S.C. 1961.

**IT IS SO ORDERED.**

Dated: September 28, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

Rosen firm's share is $40,403.00. In addition, Mavredakis was sanctioned in the amount of $25,000 for failing to dismiss Bryan and Torres' claims after discovering that they had not exhausted their remedies.